**0  IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN KOWAL, | ) | Civil Action No. 2: 18-cv-0524 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Chief United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| | ) | |
| SUPERINTENDENT BARRY SMITH, | ) | |
| THE ATTORNEY GENERAL OF THE | ) | |
| STATE OF PENNSYLVANIA, and THE | ) | |
| DISTRICT ATTORNEY OF | ) | |
| WASHINGTON COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION [1]**

Petitioner, John Kowal ("Kowal") initiated this action with the filing of a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), in which he challenges the Judgment of Sentence imposed on him at Case No. 473 of 2006, by the Court of Common Pleas of Washington County, on November 27, 2007, as amended on July 31, 2008.  (ECF No. 1).  In the Petition, Kowal alleges trial court error, prosecutorial misconduct, ineffective assistance of counsel, an illegal sentence, and cumulative error.  As relief, Kowal seeks to have his conviction and sentence vacated; a new trial, and relief from mandatory minimum in his sentencing.  (*Id*. at 16).  For the reasons below, the Petition will be denied in its entirety and a certificate of appealability also will be denied.

---

[1]      In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment. (ECF Nos. 6 and 13).

**Background**

The background of this case was summarized by the Pennsylvania Superior Court as follows:

> From 2004 to 2005, Defendant, then approximately forty-six (46) years old, engaged in a series of instances of inappropriate contact with J.O., then a thirteen (13) year old minor child (hereinafter "Victim"), which began with discussing personal issues with her, then led to "French kissing" and ultimately, four (4) instances of sexual assault.  The first assault was during a "movie night" orchestrated by Defendant, when, in his home, and with Victim's sister and Defendant's stepsons (all minors) In the room, Defendant digitally penetrated Victim's vagina for approximately thirty (30) seconds. The      second, approximately two weeks later,  occurred when Victim returned home from school. Defendant followed her into her home and again digitally penetrated her vagina. The third incident occurred during another "movie night," when Defendant again, with Victim's sister and Defendants stepsons in the room, digitally penetrated Victim's vagina for approximately one (1) minute. Finally, the fourth incident also occur during a "movie night," when Victim was awoken from her sleep on Defendant's sofa by what was described as a hard, probably plastic object entering her anus.
>
> During this time, it was stated at trial that Defendant had been treating Victim as his girlfriend - taking Victim shopping, taking her to lunch, and engaging in intimate conversations with Victim. Victim also testified that Defendant had also offered Victim alcohol during one of the "moving nights," and threatened to hurt her family and take away her friends at school if she told anyone what he had done to her.

*Commonwealth v. Kowal*, No. 1349 WDA 2016,  slip op., at 1-2 (Pa. Super. Ct. Nov. 16, 2017) (quoting PCRA Court Opinion,  2/16/17, at 1-2).  Kowal was charged with three counts of Aggravated Indecent Assault, three counts of Indecent Assault, six counts of Corruption of Minors, and one count of Involuntary Deviate Sexual Intercourse.

Before trial, Kowal was represented by James A. Marchewka, Esquire, between December 20, 2005, and June 12, 2007.  In his motion to withdraw, Attorney Marchewka informed the trial court that an irreconcilable difference had developed.  The trial court permitted Attorney Marchewka to withdraw and continued the trial until July 30, 2007.   Kowal then

retained Kristin Clingerman, Esquire, as trial counsel.  A trial by jury commenced on July 30, 2007, before the Honorable John F. DiSalle.  The jury returned a verdict on August 3, 2007. Kowal was convicted on all counts.  Initially, Kowal was sentenced to an aggregate sentence of twenty-four to forty-eight years of incarceration; however, the judgment of sentence was amended and Kowal was resentenced to twenty-one to forty-two years imprisonment.[2]   Kowal, represented by Charles M. Carpinelli, Assistant Public Defender, timely appealed to the Superior Court raising three issues:  (1) whether the evidence was sufficient to sustain the verdict; (2) whether the verdict was supported by the weight of the evidence; and (3) whether the court abused its discretion in sentencing.  While the appeal was pending, on May 30, 2008, Kowal, *pro se,* filed a "Motion to Modify Lower Court Record for Purposes of Appellate Review," in which he sought to raise  an additional twenty-three allegations of error, impropriety and prejudice.

 By Memorandum Opinion dated September 4, 2009, the Superior Court affirmed the judgment of sentence, but noted "that the record is rife with procedural irregularities," and recommended that Kowal seek to have his appellate rights reinstated pursuant to the Post Conviction Relief Act, 42 Pa. C.S.A. §§ 9541-9546. *Commonwealth v. Kowal*, 2296 WDA 2007, slip op. (Pa. Super. Ct. Sept. 4, 2009).

Later, with the assistance of new court appointed counsel, Jeffrey A. Watson, Esquire, Kowal filed a PCRA petition on September 30, 2010, seeking restoration of his appellate rights. A hearing was held on September 1, 2011, after which the court reinstated Kowal's appellate

---

[2]     On July 31, 2008, the trial court *sua sponte* amended Kowal's sentence to a sentence of not less than twenty-one years to not more than forth-two years of incarceration. The trial court explained that "after further review of the sentence and the relevant case law, that the sentences imposed for three of the six counts of Corruption of Minors should have merged with the sentences for the three counts of Aggravated Incident Assault."  *Commonwealth v. Kowal*, No. 473 WDA 2006, slip op., at 2 n.2 (Ct. of Comm. Pleas, Dec. 31, 2012).

rights, including his right to file post-sentence motions. Kowal, through counsel, filed a series of post-sentence motions, which were denied by operation of law on February 9, 2012, under Pennsylvania Rule of Criminal Procedure 720(B)(3)(b). Kowal then filed a second direct appeal, raising seven allegations of error. After briefing, the Superior Court in a memorandum opinion dated January 27, 2014, affirmed the judgment of sentence. *Commonwealth v. Kowal*, 317 WDA 2020, slip op., at 7-9 (Pa. Super. Ct. Jan. 27, 2014) (ECF No. 1-1 at 7-8). The Pennsylvania Supreme Court denied discretionary review on September 24, 2014. *Commonwealth v. Kowal,* 187 WAL 2014 (Pa. 2014).

Unsuccessful on direct appeal, Kowal filed a timely *pro se* Petition under the Post Conviction Relief Act ("PCRA"), comprised of eighty-eight typewritten pages and 180 paragraphs. Attached to the Petition were another thirty-one pages of exhibits, Exhibits A – F. In the Petition, Kowal asserted these five claims:

(i)     Counsel failed to "investigate the case and prepare an adequate defense for trial;"

(ii)     Counsel "failed to protect Defendant at trial during cross-examination by the Commonwealth, whereby the Commonwealth investigated the case at trial, introduced objectionable questioning that had no basis of fac, not did the Commonwealth present any witnesses to support their interrogatories and defense counsel mounted no defense against it;"

(iii)     Counsel "failed to object to the trial judge's direct involvement with plea negotiations just prior to the commencement of trial; and for also failing to protect Defendant's Constitutional interests to a fair trial following Attorney Marchwk's (sic) private conversations with the trial judge following his termination as counsel by Defendant;"

(iv)     "the fashioned sentence in this case is illegal, unconstitutional, and not consistent with the facts of this case;"  and

(v)     "the cumulative nature of the errors in this case so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place."

4

PCRA Petition (State Court Record No. 72).   On July 16, 2015, attorney Stephen C. Paul, Esquire was appointed to represent Kowal through his PCRA proceedings..

On April 28, 2016, Attorney Paul moved to withdraw pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc), and filed a detailed no-merit letter which addressed and found no merit to each of the issues that Kowal wanted to raise in his PCRA petition.   (State Court Record No. 76). On May 20, 2016, Judge DiSalle issued a notice of intent to dismiss the PCRA petition without a hearing, to which Kowal filed a *pro se* response.  (*Id*. at Nos. 77 and 78).   On August 2,  2016, the PCRA petition was dismissed.  (*Id*. at No. 79).

Kowal, *pro se*, timely appealed from the dismissal order to the Superior Court.  In his Concise Statement of the Matters Complained of on Appeal,  Kowal raised six claims, each having separate, lengthy subsections, many of which were claims of counsels' ineffectiveness. (*Id.* at No. 82)  The PCRA court issued an Opinion on February 16, 2017, and after addressing each claim and each subsection individually raised in the PCRA petition, found that "none of the issues had arguable underlying merit, as counsel had a reasonable basis for the claimed inaction, and Defendant was not prejudiced by said inaction." *Commonwealth v. Kowal*, No. 473-2006, slip op. (Ct. of Common Pleas, Feb. 16, 2017). (*Id*. at No. 83; ECF No. 1-3).

On appeal, Kowal raised these three claims, again each of which contained many subsections:

> (1)     Was Appellant denied a meaningful review of his first PCRA Petition and denied a hearing due to the ineffectiveness of his court-appointed PCRA counsel, as well as the PCRA Courts' [usurpation] of Pennsylvania rules and statutes of the Commonwealth of PA, and relevant case law; in violation of Article I, Section(s) 9 and 14 of the PA Constitution, and the 5th, 6th and 14 amendments to the U.S. Constitution; and was Appellant prejudiced by PCRA Counsel and the PCRA

Court's wholesale declaration that none of Appellant's PCRA claims had merit, also denying Appellant the opportunity for cumulative error review?

(2)     Was the PCRA Court in error in failing to conduct an impartial evidentiary hearing, and in denying Appellant's claim that trial counsel was ineffective for failing to object to the trial judge's participation with direct, behind close[d] doors plea negotiations in his chambers the morning of the first day of trial; and was the PCRA Court in error in failing to conduct an impartial evidentiary hearing and to provide requested discovery in the form of transcripts related to a pretrial *ex parte* meeting in judge's chambers six weeks prior to the start of trial, of which could support Appellant's claims that inappropriate and false information was relayed by counsel to the trial judge, resulting in prejudicial and biased conduct by the trial judge at subsequent hearings, trial, sentencing, an on appeal?

(3)     Was the sentencing court in error when mandatory minimum sentencing considerations were presented at a pretrial hearing by the trial court, and then later used in fashioning his sentence following his conviction; and was direct appeal counsel ineffective for failing to properly preserve, and present the claim on direct appeal a mandated by recently decided federal (Alleyne) and PA state (Washington) case law which limited the time for seeking relief to only those Pennsylvania defendants on direct appeal?

*Commonwealth v. Kowal*, No. 134 WDA 2016, slip op., at. 3-4 (Pa. Super. Ct. Nov. 16, 2017) (quoting Appellant's brief at 2-3). (State Court Record No. 85; incomplete copy located at ECF 1-4, but missing pages 3 and 5). On November 16, 2017, the Superior Court of Pennsylvania affirmed the PCRA court's denial of the petition. No other appeals were taken.

Having been denied relief in state court, Kowal filed in this Court a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 raising these five grounds for relief, each of which contain multiple claims:

**GROUND ONE:  TRIAL COURT ERROR / ABUSE OF DISCRETION:**

(i)     Denied multiple requests by new counsel within one week of trial for continuances, mostly based on former counsel's failure to turn over case files, that it was necessary to investigate and subpoena the private investigator (instigator of charges) related to improper conduct of the P.I. during her investigation;

(ii)     Participated directly, with plea negotiations hours prior to trial; then intimidating the defense when the judge warns defense counsel to accept the plea (2-4 years) or risk going to trial and being sent to prison for a very long time;

(iii)    Admitted irrelevant and unfairly prejudicial evidence into trial, that included evidence of Petitioner's military record, questioning of a suspected (but untrue) extra-marital affair, Petitioner's computer usage and Myspace use including the introduction of inaccurate statistical data-usage by adults (vs. minors) to show a predatory nature, petitioner's allowing of a neighbor to utilize his treadmill, the introduction of the 'key points' document into trial that were spousal communication and not original;

(iv)     Participated in improper ex parte communications with former pretrial counsel, James Marchewka; then later denying Petitioner's multiple requests for information and transcripts from this encounter after Petitioner learned that former counsel presented a false basis for his reasons for termination 6 weeks prior to commencement of trial; and

(v)      Admitted overly prejudicial testimony of Petitioner's spouse and stepson, neither of which were eyewitnesses to any crime; as each had motive to tarnish Petitioner's character as a result of highly disputed divorce/custody actions brought on by Petitioner.

## GROUND TWO:  PROSECUTORIAL MISCONDUCT:

The Commonwealth improperly shifted the burden of proof in this case on to the defense that began during pretrial proceedings.  It is of record that no official police investigation exists in this case, relying entirely on the 'for hire' efforts of a private investigator hired by Petitioner's spouse.  The Commonwealth, without verification or validation of information received, attacked Petitioner at trial with a line of questioning that had nothing to do with the charges and were injected purely to inflame the jury.  The Commonwealth refused to provide address and contact information to defense counsel one week prior to trial so that the defense could subpoena the P.I. to testify as she was the instigator of charges in this case.  In summary, the Commonwealth engaged in prosecutorial misconduct, denying Petitioner a fair trial and to due process that include the following:

(1) Failing to provide the defense, one week prior to trial, with contact information on the private investigator, and then when the defense failed to locate/subpoena the P.I. prior to or during trial, the Commonwealth during their closing argument inappropriately stated to the jury that the defense could have brought the P.I. to testify under subpoena.

(2)  The Commonwealth, during closing argument, asserted to the jury that Petitioner could have brought in Petitioner's stepson, Jonathan (now 23 years) to testify knowing that the defense counsel failed to speak with Jonathan prior to trial, knowing that Jonathan was a subject of the heated divorce/custody action between Petitioner and his spouse,  knowing that Petitioner had no contact with Jonathan after charges filed in this case, knowing that Jonathan was reunited with his biological father after charges in this case, knowing that Jonathan was a vital eyewitness in this case in that he was named by the victim as eyewitness to most of the alleged offenses and a 'participant' with the alleged IDSI, and knowing that Jonathan was interviewed by forensic interviewers where Jonathan revealed no evidence of any crime.

(3) ADA Tatano, during her closing argument, became personally engaged with the jury when she began (sic) to cry.  ADA Tatano personally vouched for the Commonwealth's case when she proudly announced that she had 9 witnesses who testified for the Commonwealth, but the defense had only 1 (Petitioner).

(4)  ADA Tatano discussed evidence during closing arguments never introduced into evidence, namely the showing of a prop (a remote control) insinuating its use in the IDSI allegation.  None of the inappropriate comments, remarks, or introduction of evidence during ADA Tatano's closing arguments are a fair representation of reasonable oratorical flair (as the Commonwealth suggests).

(5)  ADA Tatano, during trial admitted substantial amounts of irrelevant and unfairly   prejudicial evidence that was used against Petitioner.  Questioning of Petitioner at trial by the Commonwealth involved the casting of doubt on Petitioner's military career of 11 years, at one point stating in court that the Commonwealth had a witness to refute portions of that record.  (The Commonwealth never produced the witness, and despite efforts by Petitioner to retrieve his records from his spouse prior to, during, and after trial, were ignored).  Petitioner included in his PCRA petition, his DD-214's that show evidence of a respectable career and honorably discharged, evidence the jury never evaluated.   Petitioner's

military record had no bearing on this case and it was only strategized at trial by the Commonwealth to smear the character of Petitioner.

(6)  ADA Tatano, during trial also admitted into evidence at trial, a line of questioning suggesting that Petitioner had an extra-marital affair with a Kim Rush.   ADA Tatano persisted with her questioning despite Petitioner's answers in the negative.  This was a tactic to smear the character of Petitioner while never producing the witness or revealing any proof to their accusation during trial.

(7)  ADA Tatano provided her personal opinion to the jury that MYSPACE is a social network for children.   ADA Tatano produced the homepage of Petitioner's MYSPACE account to the jury, asserting that the one single photo of a 'friend' was that of a minor (insinuating to the jury that Petitioner was an internet pedophile on a child social site).   In fact, although the Commonwealth failed to properly investigate the facts, Kowal introduced in his PCRA the person in the photo to testify at an evidentiary hearing, that he was 22 years old at the time, a graduate of St. Vincent's College, and personal friend.   Petitioner also provided  in his PCRA, statistical usage data of MYSPACE during the time in question that showed that MYSPACE was being used primarily by adults (at greater than 85%).  The jury was given false information.  The PCRA dismissed w/o a hearing.

(8)  ADA Tatano injected other false facts during her cross-examination of Petitioner at trial of which had no relevancy to charges.   The trial court was also in error in permitting its introduction.  This included other information such as the fact that Petitioner permitted a neighbor to use his treadmill at the home, and the continued use of what has become known as the 'key points' document, a document that was constructed by Petitioner along with his spouse prior to charges in this case to show the problems and issues with the victim Petitioner's family.   The document was confidentially constructed and then later, (a) illegally  taken from Petitioner's work computer by the P.I., (b) copied, and then some version of it was given to the Washington County DA's office just prior to charges, and (c) injected in to trial despite an agreement between the parties prior to trial that nothing off of Petitioner's work computer would be used during trial. Also, Petitioner challenged to authenticity of the document used at trial but was ignored.

**GROUND THREE:  INEFFECTIVE ASSISTANCE OF PRE-TRIAL AND TRIAL COUNSEL:**

Petitioner asserts that his pretrial counsel (James Marchewka) and his trial counsel (Kristen Clingerman) were largely ineffective in their representation of Petitioner, failing to investigate the complex nature of this case, failure to mount any defense on behalf of Petitioner, failed to speak with any eyewitnesses and failing to introduce defense evidence at trial.  These include the following:

(1)   Pretrial counsel, James Marchewka (now disbarred) was ineffective when he failed to advocate for Petitioner regarding his lack of investigation into the merits of a defense despite the availability of exculpatory evidence to help prove Petitioner's innocence.  These include his failure to investigate, contact, or interview three named eyewitnesses to most of the alleged offenses; two of Petitioner's sons, and a sister of the victim.

(2)   Trial counsel, Kristin Clingerman, was ineffective when she also failed to advocate for Petitioner as defined in (1).

(3)   Pretrial counsel was ineffective for failing to even obtain discovery, thus, never understanding the evidence or nature of the charges against Petitioner.

(4)   Pretrial counsel was ineffective when he provided false information to the trial judge regarding the terms of his withdrawal from this case on the day of trial (June 12, 2007) requiring a 6 week continuance.   It is fact that Marchewka was fired by Petitioner on 6/12/07, and shortly thereafter Marchewka met with the trial judge in chambers (ex parte) and handed the judge something on a piece of paper.  It was a short time later that Petitioner learned that a public defender (Charles Carpinelli) and the prosecuting attorney (Madonna Tatano) were also present in chambers and each recalled two completely opposing versions of what occurred, neither of which were true.  Petitioner as since attempted to obtain transcripts of that encounter and are all refused.

(5)  Trial counsel failed to investigate or introduce at trial a number of available pieces of evidence or testimony to refute the allegations against him and to refute the character attacks by the Commonwealth.  These include the failure to provide the jury with electronic communications between Petitioner and two of his sons one month prior to charges in this case, that would show that the

10

private investigator and Petitioner's spouse were manipulating the
children in the marriage (who are also eyewitnesses to most of the
alleged offenses)

(6)   Trial counsel also failed to introduce at trial important
information on the private investigator's avoiding of a subpoena (a
deputy state constable was available to testify), and past legal
issues with her performance as a private investigator that include
fraud and breach of fiduciary duty.

(7)  Trial counsel also failed to introduce evidence of taint at trial
by the private investigator related to the relationship she had with
the victim, and the influences on all child witnesses.  This taint was
apparent as at least one family who was interviewed by the P.I. in
the Borough of Whitehall reported to police that she was
representing herself as in the employ of the Washington County
DA's office.  However trial counsel failed to interview or call upon
these witnesses to testify at trial.

(8)  Trial counsel failed to introduce available cell phone records
of Petitioner's spouse that would directly refute both the spouse's
testimony at trial, and of the victim's mother at trial, that they had
very little contact just prior to, during, and the months after
Petitioner's separation from his spouse and leading up to the
charges.  [Note:  the private investigator was hired by Petitioner's
spouse but the P.I. came from the victim's mother's employer).
The records would have shown that there was an alarming number
of phone calls between Mrs. Kowal, the victim's mother, and the
private investigator with peak calling around court dates.  [Note:  if
it was important for the prosecution to show distance equally
important to refute their statements as false and perjured under
oath).  Trial counsel failed to cross examine on the issue.

(9)  Trial counsel failed to incorporate a large number of receipts,
travel records and expenses, and witnesses to refute the dates
alleged by the victim as not possible.  These records show ATM
transactions, hotel receipts from out of town, airline tickets, etc.
The evidence doesn't precisely discount 100% of all possible times
but given the number of allegations over a short period of time
(about 1 and 1/2 months) and mostly on weekends, the evidence
would have proven that the victim was not being truthful.

(10)  Evidence was available to impeach Mrs. Kowal at trial as to
her own conduct just prior to trial.  Evidence existed in the way of
Comcast movie rental expenses of adult-only movies being ordered

and viewed by the children.  The evidence is based on the actual times of day (right after school, and before Mrs. Kowal returns home from work.

(11)   Evidence was available in two witnesses that would have testified at trial or at the PCRA evidentiary hearing to show the evidence presented at trial by the Commonwealth was false and not in good faith.  The first witness was Tyler Tomayko, who is the individual portrayed by the Commonwealth at trial as the "minor" on Petitioner's MYSPACE homepage. Mr. Tomayko would have provided testimony that he was in fact 22 years old in that picture. The second witness was Kim Rush, who would have been able to testify that the assertions made by the Commonwealth at trial that Petitioner was involved in an affair with her were insultingly false. Neither witness was given the opportunity to testify at the trial at the evidentiary hearing (PCRA).

(12)   Evidence was available in the form of a Private Criminal Complaint filed by Petitioner's employer against the private investigator, Petitioner's spouse, and the spouse's father.   The complaint cited numerous crimes code violations for computer theft and tampering, stealing trade secrets, and other.  (Note: The Washington County DA's office refused to take on the complaint, however, it did serve as the basis for not allowing anything from Petitioner's work computer be used at trial, but unfortunately, the Commonwealth injected the 'keypoints document' during their cross-examination of Petitioner).  As such, defense counsel should have objected, or injected information related to the private criminal complaint as evidence of wrong-doing considering the use of the keypoints document from Petitioner's work computer that was originally suppressed.

(13)   Trial counsel was ineffective in failing to investigate, interview or call to testify any character references or witnesses. As this is a case largely built around circumstantial evidence, and that the Commonwealth's witnesses primarily comprised of attacking the credibility of Petitioner, the failure to provide the jury with testimony of individuals with standing in the community to vouch for Petitioner was harmful and overly prejudicial.

**GROUND FOUR:   PETITIONER'S SENTENCE WAS ILLEGAL, PURSUANT TO (ALLEYNE).**

> When the (Alleyne) decision was decided by the federal courts in 2013, Petitioner was still on direct appeal.  Direct appeal counsel (Mary Rose Bates) declined to take the matter on appeal. Petitioner than presented his claim in a timely PCRA petition, however, the PCRA court stated that mandatory minimums were not used, and that the claim was untimely.  Petitioner disagrees in that the Pennsylvania Supreme Court recently determined that an Alleyne challenge may be raised in a timely  post-sentence motion. Secondly, the Commonwealth gave notice of mandatory minimums in this case if it was to go to trial at a 6/12/07 pretrial hearing.  The case went to trial and mandatory minimums are reflected in the sentence.

**GROUND FIVE:  CUMULATIVE ERROR.**

Petition, ECF No. 1 (quoted verbatim).

Respondents filed a timely Answer (ECF No. 9), and the original state court record,[3] in which they argue that several claims are barred due to failure to exhaust and procedural default, and because the remaining claims were denied on the merits the state courts, those claims should be denied given AEDPA's highly deferential standard of review. Kowal filed a Response. (ECF No. 15).

The Court has reviewed the filings of the parties, as well as the state court record.  The matter is fully briefed and ripe for disposition.

**The Standard for Habeas Relief under 28 U.S.C. § 2254**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"), "which imposes

---

[3]   The Court notes that no transcripts were included with the state court records received by the Court from the Office of the District Attorney of Washington County.  *See* Court's docket entry of 08/03/2018.

significant procedural and substantive limitations on the scope" of the Court's review.[4] *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017), *cert. denied*, No. 17-7437, -- U.S.---, 138 S. Ct. 1170 (Feb. 26, 2018). As a result, this Court may not grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings unless the state courts' adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2). And under the AEDPA standard, the "[s]tate court[s'] relevant factual determinations are presumed to be correct unless the petitioner rebuts [that] presumption by clear and convincing evidence." *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)). AEDPA imposes a "highly deferential" standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt. *Blystone v. Horn*, 664 F.3d 397, 417 (3d Cir. 2011).

### 1. Exhaustion of State Remedies

Among AEDPA's procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). "The exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review."

---

[4]    The first consideration in reviewing a federal habeas petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Respondents do not dispute that Kowal's petition was timely filed. *See* Response at 12. (ECF No. 9).

*Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).  When a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002).

Although mandatory, the exhaustion requirement "turns on an inquiry into what procedures are 'available' under state law."  *O'Sullivan*, 526 U.S. at 847.  Under Pennsylvania law, a federal claim becomes exhausted once it is presented to the Pennsylvania Superior Court, either as a direct appeal from a state criminal conviction or as an appeal from a PCRA Court's denial of post-conviction relief.  *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (finding that review from the Pennsylvania Supreme Court is unavailable, and therefore not required, to exhaust state court remedies).[5]

### 2. The Procedural Default Doctrine

The doctrine of procedural default serves as a corollary to the exhaustion requirement and provides a basis for a federal court to refuse to review a habeas claim.  "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' "  *McCandless v.*

---

[5]     Traditionally, under Pennsylvania law, exhaustion meant that a claim must be presented to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.  *See Evans v. Court of Common Pleas, Delaware County*, *PA*, 959 F.2d 1227, 1230 (3d Cir. 1992). However on May 9, 2000, the Pennsylvania Supreme Court issued Judicial Administration Order 218, which provides that "in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error.  When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief. . . . "  *In re:  Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam).

*Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (quoting 28 U.S.C. § 2254(b)(1)(B)(i)). "However, claims deemed exhausted because of a state procedural bar are procedurally defaulted. . . ." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Thus, claims are procedurally defaulted where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule. . . ." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate "cause" to excuse the default and "actual prejudice resulting from the alleged constitutional violation." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365, 375 (3d Cir. 2018) (quoting *Davila v. Davis*, -- U.S. ---, 137 S. Ct. 2058, 2065 (2017) (quoting *Wainwright v. Skyes*, 433 U.S. 72 (1977)), *cert. denied*, -- U.S. ---, 139 S. Ct. 1613 (2019).[6]  To demonstrate "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner satisfies the "prejudice" requirement by establishing that the trial was "unreliable or . . . fundamentally unfair" because of a violation of federal law. *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993). The burden lies with a petitioner to demonstrate

---

[6]    A petitioner, alternatively, can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a "miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999).  "However, this exception is limited to a 'severely confined category [] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'." *Preston v. Superintendent Graterford SCI,* 902 F.3d 365,375 n.11 (3d Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)).  The Court concludes that nothing in the record suggests that Kowal could meet the *Schlup* test.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (explaining that the miscarriage of justice standard "requires 'new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.'").

circumstances that would serve to excuse a procedural default.  *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750.

**Discussion**

As detailed above, Kowal raises five grounds for habeas relief, each of which contain multiple claims.  Because the Court finds that the state court rejected most of these claims on the merits, and because Kowal has failed to show that the state courts' disposition of those claims was contrary to or an unreasonable application of then extant United States Supreme Court precedent, those claims cannot afford Kowal relief.  Any claims that were not addressed by the state courts on the merits are procedurally defaulted and cannot serve as a basis for relief as Kowal has not demonstrated cause or actual prejudice to excuse the default.

Ground  One  – trial court error / abuse of discretion

In his first ground for relief, Kowal alleges that his due process rights were violated when the trial court (1) denied his multiple requests for continuance, (2) participated directly in plea negotiations, (3) admitted irrelevant and unfairly prejudicial evidence into trial including Kowal's military record, (4) participated in improper *ex parte* communications with Kowal's former pretrial counsel, and (5) admitted overly prejudicial testimony of Kowal's spouse and stepson.  Kowal raised each of these claims either on direct appeal or on collateral review.  Thus, this Court's review is governed by AEDPA's standard of review.

Kowal's first claim under Ground One alleges that the trial court erred in denying his requests for continuance. The Superior Court reviewed this issue on direct appeal and found no abuse of discretion in the denial of the continuances. The Superior Court found that Kowal,

> had failed to demonstrate how he was prejudiced by the trial court's denial of his requests for continuance.  While Attorney Clingerman, an experienced criminal trial lawyer, indicated she would have preferred more time to prepare, ultimately

17

she was ready for trial and mounted a vigorous defense on appellant's behalf. Appellant complains that he needed more time to locate Cherish;[7] however, there is no indication what Cherish would have testified to or whether she had any information helpful to appellant.    Detective Coghill conceded that Cherish reported only kissing and that, initially J.O denied any inappropriate contact. (Notes of testimony, 7/30-8/3/07 at 149-150, 161.).    Appellant failed to demonstrate that Cherish was an essential witness or that he would be able to locate her, given more time.  We cannot find the trial court's decision to deny further continuances in this matter results in reversible error.

Superior Court Opinion, 1/27/14 at 16.(ECF No. 1-1)  *See also* Trial Court Opinion, 1/4/13 at 12 (ECF N0. 1-2) (stating that Attorney Clingerman acknowledged during the PCRA hearing "that, prior to entering private practice, she had been employed as an Assistant Public Defender for Washington County as well as an Assistant District Attorney for Washington County.  In those positions, she had both prosecuted and defenses cases similar to the instant case.  Attorney Clingerman further testified that although she had asked that the matter be continued on more than one occasion, and would have preferred to have additional time, she had received all of the discovery materials and was nevertheless prepared for the trial.").

Kowal's next claim under Ground One is that the trial court improperly participated in plea negotiations. Kowal raised this claim on collateral review through an ineffective assistance of trial claim.  Both the PCRA court and the Superior Court addressed the underlying merits of the due process claim in the context of an IAC claim.

---

[7]        Many of Kowal's claims center on Lisa Cherish.  The Superior Court described Cherish as "a private investigator at the law firm where J.O's mother was employed as a paralegal. Apparently, J.O.'s mother would take J.O. into the office, and she developed a friendship with Cherish.  (Trial court opinion, 1/4/3 at 12.)  J.O. disclosed details of her relationship with appellant to Cherish, who reported these disclosures to J.O.'s parents. (*Id*.)  However, Cherish did not investigate the matter or speak with anyone other than the victim. (*Id*.)  Attorney Clingerman testified that she had no idea what Cherish would have testified to and there was no indication that J.O. made a prior inconsistent statement to Cherish.  (Id.; notes of testimony, 9/1/11 at 38.)  Cherish did send letters to Detective Alexander Coghill which were turned over by the Commonwealth. (Id. at 36-37.)."  Superior Court Opinion, 1/27/14.

The PCRA court  addressed the issue as follows:

> As Defendant did not enter a guilty plea in this case, nothing involving his alleged plea negotiations could rise to the level of prejudice.  Defendant suggests that the circumstances leading to Attorney Marchewka's withdrawal and the trial court's alleged "involvement with plea negotiations" show that the court was not impartial in his case, and that counsel was ineffective for failing to challenge the court on this matter.  However, Defendant offers no examples where the court showed any partiality, other than in denying his motion for a continuance, which was determined by the Superior Court to have been proper. Therefore, as the underlying claim has no merit and Defendant suffered no prejudice, Defendant's third claim was properly denied.

PCRA Court Opinion, 2/16/17 at 17 (internal footnotes omitted).    And the Superior Court affirmed "on the basis of the thorough and well-reasoned February 16, 2017 opinion of the PCRA court."  Superior Court Opinion, 11/16/2017.

In his third claim under Ground One, Kowal argues that the trial court improperly admitted irrelevant and unfairly prejudicial evidence at the trial, including questioning about a treadmill, a Myspace account, an alleged extra-marital affair, and a document entitled "Key Points."  On direct review, the Superior Court addressed each of Kowal's claims on its merits, soundly rejecting each of Kowal's arguments that the evidence was improperly admitted.  *Id*. at 16-22.

Kowal's fourth claim under Ground One is that the trial court engaged in improper *ex parte* communication with his former pretrial counsel, James Marchewka, and then later denied Kowal's multiple requests for information and transcripts from their communication.  As with his second claim, Kowal raised this issue on collateral review through an ineffective assistance of trial claim.  In his PCRA petition, Kowal alleged that he did not know the subject of the meeting between Attorney Marchewka and the  trial court and appears to suggest that Attorney Marchewka influenced the trial court as to Kowal's guilt.

According to the trial court's Opinion of January 4, 2013,

> On June 12, 2007, the date that the trial was to commence, Attorney Marchewka disclosed to the Court in an *in camera* proceeding that, as a result of certain statements made by Defendant, and because Defendant had desired to testify on his own behalf, he had developed an irreconcilable conflict with Defendant and was compelled to withdraw. Based on Attorney Marchewka's representations, and with Defendant's consent, the Court allowed Attorney Marchewka to withdraw and continued the trial until July 30, 2007.

Trial Court Opinion, 1/4/2013 at 10-11 (emphasis added). In its PCRA opinion, the trial court found that Kowal's assertions pertaining to improper communications between Attorney Marchewka and the court had "no underlying merit" and dismissed the claim. Again, relying on the "thorough and well-reasoned February 16, 2017, opinion of the PCRA court, the Superior Court affirmed the denial of PCRA relief.[8]

Kowal's final claim under Ground One is that the trial court admitted "overly prejudicial testimony of Petitioner's spouse and stepson." Kowal raised this claim on direct review as part of his "weight and sufficiency of the evidence" claim, but did not raise it as trial court error.[9] Thus, the claim is procedurally defaulted and barred from federal review. Kowal has presented no argument to overcome the default.

Based on all of the foregoing, the claims in Ground One are denied. As to claims one through four, inclusive, this Court is bound by the state courts' findings of fact and credibility

---

[8]    From the Court's review of the record, it appears that Kowal knew of Attorney Marchewka's conflict in the matter, and why it had become necessary for him to withdraw. Kowal does not state in his habeas petition how he was prejudiced by the meeting between Attorney Marchewka and the trial court or explain how that conversation impacted the trial court's ability to hear the case.

[9]    The Superior Court denied the claim recognizing that "the jury was free to disbelieve this testimony. The jury's verdict was not against the weight of the evidence." Superior Court Opinion, 1/27/14 at 13.

determinations under § 2254(e)(1), and Kowal has not overcome the burden imposed upon him by either § 2254(d)(1) or (d)(2), under which this Court must evaluate the Superior Court's adjudication of these claims.  As to the fifth claim raised in Ground One, the claim is denied as it is procedurally defaulted. For these reasons, Kowal is not entitled to habeas relief on Ground One.  Because jurists of reason would not find it debatable that claims one-four, inclusive, lack merit, and that claim five is procedurally defaulted, a certificate of appealability will be denied.

Ground  Two  - Prosecutorial Misconduct

In his second ground for relief, Kowal brings a host of prosecutorial misconduct claims. Respondents argue that none of these claims were presented in Kowal's direct appeal or in his PCRA Petition and thus the claims are barred as they are not exhausted and are procedurally defaulted.  ECF No. 9, at ¶49.  Kowal responds that "each of his claims were in fact presented on direct appeal, or PCRA petition and PCRA proceedings, or on appeal following dismissal of the PCRA without a hearing."  Reply at 15 (ECF No. 15).

A review of the state court record reveals while Kowal has presented on federal habeas review several claims of prosecutorial misconduct, Kowal presented only three claims as prosecutorial misconduct in the state courts, all on direct appeal and all surrounding the prosecuting attorney's closing argument.[10]  Kowal claimed that the Assistant District Attorney "improperly shifted the burden of proof, referenced facts not in evidence, and personally vouched for the Commonwealth case."  Superior Court Memorandum, 1/27/2014 at 22 (State

---

[10]     Some of the other claims were brought as trial court error or ineffective assistance of counsel claims, but they were not brought as prosecutorial misconduct claims, and they were all rejected on the merits by the state courts.  Kowal has failed to meet his burden that the resolution of any of these claims on any ground was either clearly contrary to or an unreasonable application of then-extant United States Supreme Court precedent, or in the alternative, to show that the state court's factual determinations were unreasonable. *Williams v. Taylor*, 529 U.S. 362 (2000).

Court Record, Doc. No. 71; ECF No. 1-1; Trial Court Opinion , 1/4/13, at 13-15, ECF No. 1-2).

Both the trial court and the Superior Court reviewed and rejected on the merits Kowal's claims.

Thus, these three claims are governed by AEDPA's standard of review

In affirming the judgment of conviction, the Superior Court rejected on the merits each of

Kowal's three prosecutorial claims, as follows:

First, appellant argues that ADA Tatano committed prosecutorial misconduct when she told the jury that appellant could have called Cherish and appellant's stepson, Jonathan, to testify.[4] Appellant claims that this impermissibly shifted the burden of proof to appellant and was particularly improper where appellant had sought a continuance to try to locate Cherish.[5]

Apparently, ADA Tatano's remarks were in response to defense counsel's closing argument in which she chastised the Commonwealth for not producing Cherish and Jonathan. (Notes of testimony, 7/30-8/3/07 at 586; trial court opinion 1/4/13 at 13)  Therefore, ADA Tatano's remarks were fair response. In addition, the trial court gave the jury a cautionary instruction, reiterating that the defense had no obligation to call witnesses or present evidence, and the burden of proof is always on the Commonwealth. These remarks did not warrant a mistrial.

_____

[4]Jonathan was alleged to have identified the remote control as the object penetrating the victim's anus.

[5]The closing statements are not transcribed, although appellant's motion for mistrial is transcribed. (Notes of testimony, 7/30-8/3/07 at 581).  The trial court explains that the closing arguments of counsel are recorded but not transcribed unless a specific request is made by a party.  (Trial court opinion, 1/4/14 at 13 n.18).  Neither party requested that the remarks be transcribed. (Id.)  We could find wavier on this basis.  [citations omitted].  However, the gist of the prosecution's remarks may be gleaned from the discussion concerning appellant's motion for mistrial.  (Notes of testimony, 7/30-8/3/07 at 581-587.)  Therefore, in the interest of lenity and conservation of judicial resources, we will decline to find waiver.

_____

Next, appellant argues it was improper for ADA Tatano to point out to the jury that the Commonwealth had nine witnesses, whereas appellant had only one, himself. According to appellant, this amounted to personal vouching for the Commonwealth.  . . . .  Here, while her remarks may have been improper, we

disagree that ADA Tatano expressed a personal opinion as to appellant's guilt or personally vouched for the credibility of her witnesses by pointing out that the Commonwealth called nine witnesses and appellant called one witness. Moreover, the trial court cautioned the jury that,

> Again, the defense has no obligation, it's not required to present anything or prove anything in his own defense. The fact there was a comment by the prosecutor about whether the defense could call a witness; that the defense only had one witness; I'm going to explain to you that the number of witnesses has no bearing on this case. The number of witnesses has no bearing on which side has the stronger side.

Notes of testimony, 7/30-8/3/07 at 589.

> You should not decide this case on the basis of which side produced the greater number of witnesses, or the greater amount of evidence. As I said before, it doesn't matter that the Commonwealth had nine and the defendant has only one.

*Id.* at 593.  We determine that the trial court's thorough cautionary instructions to the jury cured any possible taint in this regard.  There is no merit here.

Superior Court Opinion, 1/27/14 at 23-26; ECF No. 1-1).

The Court finds that the decision of the Superior Court easily withstands review under AEDPA.  Based on the state courts' analyses, this Court finds that Kowal has failed to meet his burden to prove that the adjudication of his claims was either contrary to or an unreasonable application of then extant Supreme Court precedent.  Kowal also has failed to established that the state court's factual determinations were unreasonable.  *See Pemberthy v. Beyer*, 19 F.3d 857, 864 (3d Cir. 1994) (holding that presumptions of corrections of state court determinations apply "not only when a state trial court makes what are constitutionally regarded findings of fact, but also when a state appellate court makes factual determinations in a written opinion.").

Based on all of the foregoing, as to these three claims, this Court is bound by the trial court's findings of fact and credibility determinations under § 2254(e)(1), and Kowal has not

overcome the burden imposed upon him by either § 2254(d)(1) or (d)(2), under which this Court must evaluate the Superior Court's adjudication of the claims brought in Ground Two.  Kowal is thus not entitled to habeas relief on these claims.  Because jurists of reason would not find it debatable that these claims lack merit, a certificate of appealability will be denied.

As to the remaining claims of prosecutorial misconduct brought in Ground Two, the claims are procedurally defaulted and therefore are barred from federal review as they were not addressed on the merits by the state courts and cannot now be raised in the state court.  Kowal has presented no persuasive argument to overcome the default.  Based on all of the foregoing, Kowal's procedural defaulted claims of prosecutorial misconduct will be denied.  Jurists of reason would not find this Court's determination debatable. As a result, a certificate of appealability will be denied.

<u>Ground Three – Ineffective Assistance of Counsel ("IAC")</u>

In his third ground for relief, Kowal originally raised thirteen separate claims of counsel's ineffectiveness; in his Reply, Kowal stated that he would strike the claims listed in subparagraphs 10, 12, and 13.  Thus, ten claims of IAC are now before this Court.

The Supreme Court of the United States established the legal principles that govern IAC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). An IAC claim has two components. Under the first prong of *Strickland*, often referred to as the "performance" prong, a petitioner must show that counsel's performance fell below an below an objective standard of reasonableness." *Id.* at 688.  Under the second prong, often referred to as the "prejudice" prong, a petitioner must demonstrate prejudice as a result of counsel's deficient performance.  *Id*. at 692.  Although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. *See also Mathias v. Superintendent Frackville SCI*, 876 F.2d 462, 477 (3d Cir. 2017).

The United States Court of Appeals for the Third Circuit has held that Pennsylvania's test for assessing IAC claims is not contrary to *Strickland*. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *see also Commonwealth v. Pierce,* 527 A.2d 973, 976 (Pa. 1987) (expressly stating that Pennsylvania follows the *Strickland* standard of review). Thus, the relevant question is whether the decisions of the Pennsylvania courts involve an unreasonable application of *Strickland*. *Jacobs v. Horn*, 395 F3d 92, 106 n.9 (3d Cir. 2005). That is, a petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

When resolving an IAC issue, the question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Strickland,* 466 U.S. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms'." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 699).

The Court notes to begin with that Kowal's allegations are often multi-faceted and are stated as subissues making it difficult for the Court to ensure that it has addressed each ineffectiveness claim. Similarly, it is difficult to determine what IAC claims were brought before the state courts as even the PCRA court noted the trouble it had deciphering Kowal's claims and commented that it had "attempt[ed] to assign some order to the erratic nature of

25

Defendant's petition."   Trial Court Opinion 2/16/17 at 11.   With that said, the Court will now address the ten IAC claims that Kowal has brought in this habeas petition.

It appears from the state court record, that seven of Kowal's ten IAC claims were presented to the state courts, and each was rejected on its merits:   Claims one, two, five, six, seven, eight, and nine.   The Court will begin by addressing these seven claims.

Kowal's first and second claims under Ground Three are related.   Kowal alleges that both his pretrial counsel and trial counsel failed to interview several witnesses in preparation for his trial — two of Petitioner's sons and a sister of the victim.   In his PCRA petition, he alleged that counsel failed "to call a number of children as witnesses whom were alleged to have been present at the time of the (sic) some of the offenses."[11]   The PCRA court rejected this claim finding as follows:

> Defendant claims these children, had they been called as witnesses, would have testified that they never saw Defendant assault Victim.   However, this testimony would not have been of any help to the defense because it was never disputed that these children did not actually see the sexual assaults occur.   Indeed, it was established that on two occasions, these other children were focused on the television in the room, rather than Defendant and Victim, and on the third occasion none of the children were present.[61]   It is clear that counsel was reasonable in determining that having multiple children testify to something that was already established would not have been helpful to the defense, and thus, counsel could not be ineffective for failing to call those witnesses.
>
> _____
> [61] *See* TT 230-245.ˑ

PCRA Court Opinion, 2/16/2017 at 14.

_____

[11]      From a review of the state court record, it appears that these three witnesses are the same three minor children witnesses that Kowal alleged in his PCRA petition that counsel had failed to interview.   In PCRA counsel's no merit letter, counsel states that "these children had been interviewed previously by the Child Advocacy Unit at Children's Hospital and the Washington County Children's Advocate Unit.   It is clear from the trial transcript, and from Defendant's own admission that his Attorney's (sic) had in their possession and reviewed these interview transcripts."   No-Merit Letter, 4/15/16 at 5 (State Court Record No. 77).

In claim five of Ground Three, Kowal alleges that trial counsel did not investigate or introduce at trial several available pieces of evidence.  He contends that trial counsel should have introduced evidence of electronic messages between him and his two sons.  Kowal raised a similar issue in his PCRA petition, which was denied on the merits:

> The first subsection asserted that counsel should have introduced evidence of electronic messages between Defendant and his stepsons that Defendant alleges would have shown the taint of certain witnesses against him. However, as correctly pointed out by PCRA counsel in his "merit letter," without presenting some sort of evidence suggesting that additional information beyond what was known already would have been uncovered, a claim of ineffectiveness on those grounds will fail.  Since Defendant offers nothing to support the claims he makes in this regard, there is no merit to his claim that counsel was ineffective for failing to introduce these purported communications as evidence.

*Id*. at 12 (internal footnote omitted).

In claims six and seven of Ground Three, Kowal claims that trial counsel failed to introduce at trial important information about Lisa Cherish, the private investigator, and failed to introduce evidence of taint by the private investigator related to the relationship she had with the victim and the influences on all child witnesses evidence.  The PCRA court rejected this claim pointing out that Cherish did not testify at trial, and that

> Defendant again offers little apart from speculation as to what would have been uncovered had counsel engaged in the additional investigation he claims should have been completed prior to trial. . . . Indeed, as stated above, without presenting some sort of support suggesting that additional information beyond what was already known would have been uncovered from that action, a claim of ineffectiveness on those grounds will fail.
>
> Defendant offers nothing but bald speculation to support what he avers could have been uncovered by the completion of a further investigation into the matter by his trial counsel.  In fact, the Superior Court addressed his assertions as they related to Ms. Cherish, in the context of Defendant's challenge to the trial court's denial of his application for continuance. The Superior Court held that there existed "no indication what Cherish would have testified to or whether she had any information helpful to [Defended]."   Therefore, as Defendant continues

27

to offer no evidence to support his claim, and the issue has been determined to have no underlying merit comment it also fails.

*Id*. at 12-13. (internal footnote omitted).

In Kowal's eighth claim of Ground Three, he alleges that trial counsel failed to introduce available cell phone records which would have directed refuted the testimony of his ex-wife and the Victim's mother, and would have shown "an alarming number of phone calls between Mrs. Kowal, the victim's mother, and the private investigator. . . ." Petition at 16.  The PCRA court rejected this claim, as follows:

> Communication between these parties was disclosed at trial through the testimony of Victim's mother and Defendant's ex-wife. The testimony showed that these conversations related to the interviews being conducted by the police and the contact Defendant's ex-wife had with Lisa Cherish regarding PFA proceedings against Defendant. Therefore, as evidence of these calls was presented at trial and the alleged contradiction in these witnesses' testimony did not exist, Defendant's claim has no arguable underlying merit in that regard. Defendant offers no legitimate argument as to how counsel's failure to introduce those purported records had no reasonable basis.

*Id*. at 13 (internal footnote omitted).

In Kowal's ninth claim of Ground Three, he claims that trial counsel failed to introduce certain pieces of evidence which he claims supported an alibi defense, such as receipts, travel records and expenses.  The PCRA court denied this claim concluding that,

> Defendant admitted to having been in the room watching movies with Victim and other children when Victim stated that two of the assaults occurred, entering receipts and phone records as evidence to "narrow[] the dates and items for which the alleged assaults were described [sic] and . . . place [] Defendant in other locations where some of the alleged assaults were to have happened [sic] would not have established anything that was not already known at trial and would not have provided a legitimate alibi for Defendant.  Therefore, it cannot be said that counsel had "no reasonable basis" for not pursing this theory, and thus this claim also has not merit.

*Id*. at 16 (internal footnote omitted).

The Superior Court, after reviewing the appropriate standards for examining allegations of ineffective assistance of counsel, affirmed the denial of the PCRA petition based on "the thorough and well-reasoned February 16, 2017 opinion of the PCRA court."  Superior Court Opinion, 11/16/2017.

As to each of these seven claims, this Court is bound by the PCRA court's findings of fact and credibility determinations under § 2254(e)(1), and Kowal has not overcome the burden imposed upon him by either § 2254(d)(1) or (d)(2), under which this Court must evaluate the Superior Court's adjudication of these claims.  Kowal is thus not entitled to habeas relief on these seven claims.  Because jurists would not find it debatable that these seven claims lack merit, a certificate of appealability will be denied.

Claims three, four, and eleven of Ground Three were not raised in state court, and so these claims are procedurally defaulted.  Kowal has proffered no argument why the procedural default should be excused.  As a result, these three claims will be denied for that reason.  Jurists would not find this Court's determination debatable. Thus, a certificate of appealability will be denied.

### Ground  Four – Petitioner's Sentence Was Illegal, Pursuant to (Alleyne).

In his fourth ground for relief, Kowal argues that his sentence is illegal pursuant to *Alleyne v. United States*, -- U.S. --, 133 S.Ct. 2151 (2013), which holds that any fact which triggers the application of a mandatory minimum sentence must be submitted to the jury for a finding.  This claim was addressed by both the PCRA Court and the Superior Court and rejected on the merits. As a result, this Court's review is governed by AEDPA's standard of review. [12]

---

[12]      On direct appeal, Kowal argued that his aggregate sentence of 21 to 42 years was unreasonable and manifestly excessive; that the trial court imposed an aggravated sentence range

The PCRA Court rejected this claim explaining that "the court did not impose a mandatory sentence on any of the charges, but rather imposed consecutive sentences within the aggravated sentencing guideline range, based on the specific circumstances of the instant case, which the Superior Court held to be appropriate." PCRA Court Opinion, 2/16/2017, at 18. *See also* Sentencing Order (State Court Record, Doc. 31).

In affirming the PCRA Court's decision to dismiss the PCRA claim, the Superior Court found as follows:

> [W]e note that the record substantiates that Appellant's sentences were imposed pursuant to the sentencing guidelines, and the sentencing court did not utilize a mandatory minimum sentencing statute.  N.T. Sentencing, 11/27/07; Trial Court Opinion, 7/31/08, at 8-11.  Thus, Appellant's sentencing challenge is meritless.

Superior Court Opinion, 11/16/2017, at 5-6. (State Court Record, Doc. 85).

The Court finds that the decision of the Superior Court easily withstands review under AEDPA.  Based on all of the foregoing, the claims of Ground Four are denied.  The Court is bound by the PCRA court's findings of fact and credibility determinations under § 2254(e)(1), and Kowal has not overcome the burden imposed upon him by either § 2254(d)(1) or (d)(2), under which this Court must evaluate the Superior Court's adjudication of this claim.  Kowal therefore is not entitled to habeas relief on it.  Because jurists would not find it debatable that Kowal's fourth ground for relief lacks merit, a certificate of appealability will be denied.

---

without considering Kowal's individual circumstances; and that the trial court impermissibly relied on factors already included in the guideline calculations.  Both the trial court and the Superior Court rejected the claim.  The Superior Court found that "[t]here were ample reasons on the record to support [Kowal's] sentence in the aggravated range of the sentencing guidelines, and the sentence was not unreasonable."  Superior Court Memorandum, 1/27/14, at 29 (State Court Record, Doc. 71; ECF 1-1); see also Trial Court Opinion, filed 1/04/2013,  at 17 ("the Court made specific findings on the record of the circumstances which the Court found were "aggravating circumstances' under the Sentencing Guidelines."). (State Court record, Doc. 67; ECF No. 1-2).

<u>Ground  Five – Cumulative Error</u>

In his fifth and final ground for relief, Kowal claims that the cumulative effect of all the alleged errors entitles him to a new trial.  Kowal raised this issue on collateral review.  The PCRA court denied the finding as follows:

> This assertion, as with Defendant's prior issues, has no merit, and thus, the court properly dismissed the claim.  As there is no merit in any of Defendant's individual claims, it follows that the claims taken cumulatively would also have no merit.  Defendant received a fair trial and a legal sentence, and counsel provided effective representation throughout the process.  Therefore, Defendant's final claim is also meritless.

PCRA Court Opinion, 2/16/2017.  The Superior Court affirmed without further discussion "on the basis of the thorough and well-reasoned February 16, 2017 opinion of the PCRA court."

Kowal has provided no facts to support his vague and general allegation of "cumulative error."  Without particularized facts from which any specific "errors" can be addressed, individually or cumulatively, the issue as stated in the petition is incapable of meaningful response or review.  *See Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987).  Nevertheless, to the extent that the "cumulative error" claim encompasses all the claims that were extensively reviewed and rejected on the merits by the state courts, both on direct and collateral review, as discussed above, those decisions easily withstand review under AEDPA.

To have a "cumulative" effect which would entitle Kowal to relief, this Court must first have found that the state courts committed multiple errors.  But because the Court has determined there were no errors, there can be "no errors to bundle" together for a cumulative prejudice review.  *Pursell v. Horn*, 187 F. Supp. 2d 260, 363 (W.D.Pa. 2002).

Based on all of the foregoing, the claim for relief stated in Ground Five is denied.  The Court is bound by the PCRA court's findings of fact and credibility determinations under §

2254(e)(1), and Kowal has not overcome the burden imposed upon him by either § 2254(d)(1) or (d)(2), under which this Court must evaluate the Pennsylvania Superior Court's adjudication of this claim.  Kowal therefore is not entitled to habeas relief on it.  Because jurists would not find it debatable that Kowal's fifth ground for relief lacks merit, a certificate of appealability will be denied.

## Conclusion

For all of the above reasons, the Petition for Writ of Habeas Corpus will be denied. Further, as there is no basis upon which to grant a certificate of appealability, a certificate of appealability likewise will be denied.   An appropriate Order follows.

Dated: July 30, 2020                                    s/Cynthia Reed Eddy
                                                         Chief United States Magistrate Judge